# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Gabriel Lopez (DOB: ███-1983)<br><br>*Defendant(s)* | )<br>)<br>) Case No. **21-M-474 (SCD)**<br>)<br>)<br>)<br>) |

CLERK'S OFFICE
A TRUE COPY
Aug 20, 2021
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 19, 2021__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 841(b)(1)(A), and 846 | possession of a controlled substance with intent to distribute, attempted distribution of a controlled substance, and conspiracy to do the same |

This criminal complaint is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

MATTHEW COOPER (Affiliate)  Digitally signed by MATTHEW COOPER (Affiliate)
Date: 2021.08.20 14:28:31 -05'00'

*Complainant's signature*

Matthew Cooper, Task Force Officer (DEA)
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: __08/20/2021__

*Judge's signature*

City and state:  __Milwaukee, Wisconsin__    Stephen C. Dries, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew Cooper, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Detective with the Milwaukee Police Department (MPD) and have been a law enforcement officer for over 24 years. I have been a Detective for over 17 years and have been assigned to conduct narcotics investigations for over 16 years. I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years. I have been assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) for over 13 years. I am also a Task Force Officer with the United States Department of Justice's Drug Enforcement Administration (DEA) and have been since October 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws, including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, Title 18, United States Code, Sections 1956 and 1957, and other related offenses. During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally.

3. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. I have received training in the investigation of drug trafficking, money laundering, financial investigations, and computer crimes.

My training and experience include the following:

    a. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

    b. I have used my training and experience to locate, identify, and seize multiple types of narcotics, drugs, drug proceeds, and drug contraband.

    c. I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

    d. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized.

    e. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug traffickers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

    f. I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes.

    g. I know drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to distance themselves from instrumentalities used to facilitate drug trafficking.

    h. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations.

i. I know that drug traffickers often keep documents and records about the transportation, sourcing, ordering, sale, and distribution of controlled substances.

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets in order to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

k. I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know it is common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchases by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

l. I know drug traffickers maintain large amounts of currency, including in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number

3

of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of coconspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

m. I know drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

n. I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and

4

corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

o. I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

p. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment used to conduct such operations.

4. The information set forth in this affidavit comes from my personal involvement in this investigation, along with information provided to me by other law enforcement officers. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

5. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against GABRIEL LOPEZ (DOB: 11/30/1983) for possession of a controlled substance with intent to distribute, attempted distribution of a controlled substance, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

## PROBABLE CAUSE

6. On August 19, 2021 at approximately 11:51 a.m., case agents observed GABRIEL LOPEZ standing in the driveway at 4655 North 45th Street, Milwaukee, Wisconsin. LOPEZ then entered the side door of the residence with two other subjects. This door leads directly into the

5

kitchen of 4655 North 45th Street, Milwaukee, Wisconsin. Approximately five minutes later, case agents observed one of the other subjects leave the residence. A short time later, LOPEZ exited the residence and drove around the neighborhood. LOPEZ drove slowly past several law enforcement vehicles and appeared to be trying to see if anyone was inside the vehicles. LOPEZ then drove back to 4655 North 45th Street, Milwaukee, Wisconsin, where he picked up one of the remaining subjects. LOPEZ and this subject again drove around the neighborhood examining law enforcement vehicles. LOPEZ then dropped the subject off at 4655 North 45th Street, Milwaukee, Wisconsin. LOPEZ then drove away from the residence at approximately 1:16 p.m. Case agents attempted to locate LOPEZ, but lost sight of him.

7. On August 19, 2021 at approximately 2:04 p.m.—less than one hour after the observations described above, case agents executed a search warrant at 4655 North 45th Street, Milwaukee, Wisconsin. Inside of the residence, case agents found eight brick-shaped packages, wrapped in tape, which field tested positive for cocaine. In total, case agents recovered approximately 8 kilograms of cocaine. Photographs of those controlled substances are copied below.





8. On August 19, 2021, case agents conducted a traffic stop of GABRIEL LOPEZ's vehicle. LOPEZ identified himself, LOPEZ's vehicle matched the vehicle seen at 4655 North 45th Street, Milwaukee, Wisconsin, and LOPEZ's clothing matched the clothing of the person seen at and inside of 4655 North 45th Street, Milwaukee, Wisconsin. LOPEZ was arrested by the Waupaca

County Sheriff's Office. A cellular phone was recovered from LOPEZ's vehicle and was seized as evidence. Due to the time of day of LOPEZ's arrest, LOPEZ was booked into the Waupaca County Jail pending transport to the United States Marshals Service in Milwaukee, Wisconsin.

9. Case agents also arrested one of the other subjects. That subject consented to a search of his phone—showing a communication with a "Lopaz" with a cell phone number of (715) 252-5756. Case agents know that the area code (715) is a phone number associated with northern Wisconsin. A WhatsApp message sent to "LOPAZ" on August 19, 2021 listed the address: "4655 n 45th st Milwaukee wi"—the address where the 8 kilograms were found.

10. On August 20, 2021, case agents interviewed LOPEZ after advising him of his rights. LOPEZ stated in substance the following: He had agreed to coordinate a cocaine transaction between the two other subjects seen at the residence. Upon entering the residence, LOPEZ observed what he described as a brick-shaped package which he believed to be a kilogram package of cocaine. LOPEZ stated he observed one of the other subjects cutting open the gray tape on the outer layer of the packaging. LOPEZ stated one of the subjects, who had agreed to purchase two to three kilograms of cocaine, then left the residence and agreed to return with money to purchase the cocaine. That subject never returned to the residence so LOPEZ left and began to drive home when he was stopped and arrested.

11. Based on the above information and facts, I submit that there is probable cause to believe that GABRIEL LOPEZ has violated the laws of the United States, in that he possessed a controlled substance with intent to distribute, attempted to distribute a controlled substance, and conspired to do the same, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, all in the Eastern District of Wisconsin.